# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00552-CR

**Keith Wayne Henson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 39066, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Keith Wayne Henson, appellant, pleaded guilty to possessing 400 grams or more of methamphetamine and possessing certain chemicals with the intent to manufacture methamphetamine. *See* Tex. Health & Safety Code Ann. §§ 481.115(a), (f) (possession of controlled substance), .124(a), (b)(3)(B) (possession with intent to manufacture controlled substance) (West 2010). On appeal, appellant complains that the trial court erred in denying his pre-trial motion to suppress (1) evidence that he contends was obtained pursuant to a search warrant lacking probable cause and (2) a non-verbal statement that resulted in the discovery of concealed evidence, which he claims was obtained without compliance with article 38.22 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005) (setting forth procedures governing admissibility of accused's written or oral statements). We will affirm the judgments of conviction.

**FACTUAL AND PROCEDURAL BACKGROUND**

In July 2010, the City of Burnet Police Department obtained a warrant to search appellant's residence for evidence of a conspiracy to sell and distribute methamphetamine. At the time, appellant was residing in a home owned by his parents and cohabitating with an alleged co-conspirator, Jeanette Gaines, who was also named in the search warrant. It is undisputed that appellant and Gaines were restrained and in custody during the search.

While police officers were searching the property, appellant led the officers to evidence that had been buried on the property and other evidence hidden in a shed. Appellant asserted that the hidden materials were owned and placed on his property by a third party. These materials were later established to constitute methamphetamine or constituents of methamphetamine. Based on this evidence and other materials discovered in the search, appellant was charged with multiple drug-related crimes as well as unlawful possession of a firearm by a felon.

Before trial, appellant filed a motion to suppress all evidence found pursuant to the search warrant, alleging that the affidavit supporting the warrant did not establish probable cause. Appellant further sought to suppress the concealed materials whose location he had disclosed to investigators, asserting that the act of leading investigators to those materials constituted a non-verbal statement that was induced by police statements that were the functional equivalent of an interrogation. Appellant argued that the fruits of his non-verbal statement should be excluded because the non-verbal statement resulted from custodial interrogation, he was not properly *Mirandized*, and no recording of the statement was made. *See Miranda v. Arizona*, 384 U.S. 436

2

(1966); Code Crim. Proc. art. 38.22 (setting forth procedures governing admissibility of accused's written or oral statements).

Following an evidentiary hearing, the trial court denied the motion to suppress, concluding that (1) under the totality of the circumstances, probable cause was shown for the search warrant, (2) appellant's non-verbal statement was voluntary and was not coerced or induced by the police officers, and (3) appellant had been properly *Mirandized* prior to showing officers the location of the hidden materials. Appellant subsequently pleaded guilty to the two charges of which he was convicted; in exchange, the State abandoned the remaining charges. A jury assessed his punishment at confinement for 40 years on each count, to be served concurrently, with fines totaling $110,000.

On appeal, appellant challenges the trial court's order denying his motion to suppress, asserting that the affidavit supporting the search warrant failed to establish probable cause and that the non-verbal statement that resulted in the discovery of hidden inculpatory evidence is inadmissible under article 38.22 of the Texas Code of Criminal Procedure.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court's ruling on a motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

3

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457-58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the court's application of the law to those facts. *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. We afford almost total deference to the trial judge's rulings on mixed questions of law and fact when the resolution of those questions depends on an evaluation of credibility and demeanor. *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *Johnson*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d at 89. All purely legal questions are reviewed de novo. *Johnson*, 336 S.W.3d at 657; *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).

At the suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman*, 955 S.W.2d at 89. Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the court's findings of fact and will not disturb them on appeal. *Johnson*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d at 89; *Miller v. State*, 335 S.W.3d 847, 854 (Tex. App.—Austin 2011, no pet.). Where the trial court did not make explicit findings of fact, we review the evidence in the light most favorable to the court's ruling and will assume the court made implicit fact findings that are supported by the record. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche*, 10 S.W.3d at 328.

4

**DISCUSSION**

In his first appellate issue, appellant challenges the existence of probable cause for the search warrant.

No search warrant may issue unless a sworn affidavit is first presented to the magistrate setting forth sufficient facts to show that probable cause exists for its issuance. Code Crim. Proc. art. 18.01(b) (West Supp. 2012). Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate, there is at least a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13 (1983)).

When reviewing a decision by a judge or magistrate to issue a search warrant, we apply a deferential standard of review because of the constitutional preference for law enforcement officials to obtain warrants rather than conduct warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). The facts submitted for the magistrate's probable cause determination are those contained within the four corners of the affidavit and are to be read in a common-sense and realistic manner. *Id.*; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). A magistrate may draw reasonable inferences from the facts stated in the affidavit. *Rodriguez*, 232 S.W.3d at 61; *Hedspeth v. State*, 249 S.W.3d 732, 737 (Tex. App.—Austin 2008, pet. ref'd). When in doubt about the propriety of the magistrate's conclusion, we defer to all reasonable inferences the magistrate could have made. *Rodriguez*, 232 S.W.3d at 61; *see McLain*, 337 S.W.3d at 271. Our inquiry, then, is whether there were sufficient facts stated within the four

5

corners of the affidavit, coupled with reasonable inferences from those facts, to establish a fair probability that evidence of a particular crime would likely be found at a given location. *See Rodriguez*, 232 S.W.3d at 62.

The affidavit at issue in this case sought a warrant to search appellant's house in Burnet County and all other buildings, structures, places, and vehicles on the premises. The affiant was City of Burnet police officer Noland Hicks. We summarize the pertinent portions of the affidavit:

- On July 2, 2010, at 12:09 p.m., an anonymous caller reported to Hill Country Area Crime Stoppers that appellant was manufacturing methamphetamine at his Burnet County residence. The caller provided (1) a description of appellant and indicated where he lived and who owned the property; (2) a statement that appellant was currently on parole for manufacturing methamphetamine; (3) information about his medical history; (4) information about appellant's methamphetamine manufacturing process, including sources of constituents, locations on the property used for manufacturing, and appellant's practice of burying both the methamphetamine and the glassware used to make it in the area behind a greenhouse located on the property; and (5) information about the layout of the property and fixtures on the property. Hicks was able to independently corroborate appellant's physical description, his prior criminal history, where he resided, and who owned the property.

- On July 8, 2010, Hicks had been informed by another officer, Rick Carter of the Marble Falls Police Department, that on June 2, 2010, that officer had accompanied another Marble Falls police officer, Glenn Hanson, to appellant's residence to meet with Gaines regarding a criminal investigation. Carter was experienced in the investigation of clandestine methamphetamine laboratories. While at appellant's residence, Carter smelled an odor he believed was a chemical associated with the manufacture of methamphetamine. Appellant was present at the time, and Carter knew appellant to have a prior arrest for manufacturing methamphetamine.

- On July 8, 2010, Hicks met with a confidential informant who had provided credible and reliable information in the past that led to the arrest of more than ten narcotics offenders and the seizure of a variety of controlled substances. Hicks averred that the informant was knowledgeable about the appearance, use of, and method of packaging methamphetamine and was familiar with the chemicals and processes used to manufacture methamphetamine.

6

The informant stated that he[1] had known Gaines for over ten years and had purchased methamphetamine from her on many occasions during that time period. The informant further stated that he had been present during methamphetamine drug transactions between Gaines and others and had also been present while she manufactured methamphetamine. Hicks affirmed that the informant was familiar with the look and smell of the chemicals used in the manufacturing process. The informant claimed knowledge of appellant's methamphetamine-manufacturing activities through conversations with Gaines and other drug users.

- The informant advised that he had been to appellant's residence in the preceding 48 hours and had "observed a strong chemical smell associated with the manufacture of methamphetamine emitting from the residence." Based on his experience with the methamphetamine-manufacturing process, "[t]he [informant] believed that due to the strong chemical odor, that [appellant] and Gaines were in the process of manufacturing methamphetamine at that time." The informant further stated that he returned to the residence approximately 24 hours later and the smell was no longer present, which led him to conclude that the manufacturing process had been completed. Based on his experience with appellant and Gaines, the informant believed that methamphetamine was being kept, stored, used, and sold from the residence.

- From June 2, 2010, through July 9, 2010 (the date of the affidavit), police officers with the Burnet County Special Operations Unit, Marble Falls Police Department, and Department of Public Safety Criminal Investigation Division, conducted periodic surveillance of appellant's Burnet County residence and "observed traffic consistent with narcotic trafficking by observing individuals arrive at the residence and stay on [sic] a few minutes then leave the residence."

- A criminal history search revealed that appellant and Gaines had both been arrested on multiple occasions for possession, manufacture, and transportation or delivery of controlled substances or chemical precursors.

On appeal, appellant argues that each source of information should be evaluated separately and stricken if stale, conclusory, or uncorroborated. He asserts that the information about the "smell" emanating from his residence in June 2010 was too stale to be considered; the anonymous tip was insufficient because only a few non-material facts were corroborated; the

---

[1] The gender of the confidential informant does not appear in the record.

7

information obtained from the informant was conclusory with regard to appellant as opposed to Gaines; and the information regarding surveillance of the property was conclusory and did not provide any information about the number of cars, identity of individuals, or their activities that were allegedly consistent with narcotic trafficking. Appellant argues that, with the foregoing information stricken, the magistrate could not reasonably have concluded that there was a fair probability that evidence of illegal activity could be found at appellant's Burnet County residence.

In reviewing the search warrant affidavit, the trial court carefully considered appellant's argument and found that, *if viewed alone*, (1) the information from June 2010 would not support a finding of probable cause because that information was stale, (2) the minimally corroborated anonymous tip would not support a finding of probable cause, and (3) the information from the confidential informant would be marginal but not clearly insufficient. However, the court said that, in accordance with *Illinois v. Gates*, 462 U.S. 213 (1983), the information in the affidavit could not be viewed in isolation, and based on the totality of the information provided in the search warrant, the magistrate had a substantial basis for concluding that probable cause existed. *See id.* at 238 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."). The court noted that, in addition to the information contained in the challenged portions of the affidavit, "[t]he affidavit does contain other facts including observation of vehicle traffic consistent with drug-trafficking and knowledge of this defendant and the other person, [Gaines], living [in] the house as being known drug dealers."

8

Probable cause requires evidence that amounts to "more than bare suspicion" but "less than . . . would justify . . . conviction." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). The existence of probable cause necessitates "an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Weide v. State,* 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *Brinegar*, 338 U.S. at 175). Probable cause is not a "finely tuned standard" but is instead a "fluid concept," and its "substantive content" is derived from "the particular context[] in which" it is assessed. *Orneales v. United States*, 517 U.S. 690, 696 (1996). Probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Id*. "Known facts and circumstances include those personally known to law enforcement officers or those derived from a 'reasonably trustworthy' source." *Weide*, 214 S.W.3d at 24.

The task of a reviewing court, which in this case includes the trial court, is not to determine de novo whether a search warrant affidavit states probable cause, but rather is to ensure that, given the totality of the circumstances set forth in the affidavit, the issuing magistrate had a substantial basis for concluding that probable cause was shown. *Gates*, 462 U.S. at 239; *Hennessy v. State*, 660 S.W.2d 87, 89 (Tex. Crim. App. 1983). Under the totality-of-the-circumstances standard of analysis, the information contained in the affidavit must not be viewed in isolation, as appellant suggests. *State v. Long*, No. 03-11-00725-CR, 2012 WL 1959316, at *6 (Tex. App.—Austin May 31, 2012, no pet.) (mem. op., not designated for publication). To the contrary, as the trial court correctly observed, it is impermissible to employ a "divide-and-conquer" or

9

"piecemeal" approach to analyzing the information upon which the magistrate found probable cause to exist. *See id.* Moreover, the resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to warrants. *United States v. Ventresca*, 380 U.S. 102, 109 (1965); *Hennessy*, 660 S.W.2d at 92. Keeping this preference for the warrant process in mind, and giving the magistrate's probable cause determination the deference it is due, we conclude that, based on the totality of the circumstances presented in Officer Hicks's affidavit, the magistrate had a substantial basis for concluding that probable cause existed. Because the trial court did not err in denying appellant's motion to suppress on that basis, we overrule appellant's first appellate issue.

In his second appellate issue, appellant contends that the trial court should have suppressed his non-verbal "statement" in which he led officers to hidden inculpatory evidence. It is undisputed that appellant was in custody at the time that he directed police to drug materials buried in his yard and hidden in a shed on his property. Appellant contends, however, that he was not given appropriate statutory or *Miranda* warnings prior to volunteering the information, that he was further induced to provide the information based on statements made by officers that were tantamount to custodial interrogation, and that his oral statement was not electronically recorded as required by article 38.22 of the Texas Code of Criminal Procedure.[2]

---

[2] *Miranda* warnings must include a statement informing the individual of the right to remain silent, that any statement made may be used as evidence against him, that he has the right to have an attorney present during questioning, and if he is unable to hire an attorney, he has the right to have an attorney appointed if he cannot afford one. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). These warnings are also required by article 38.22 of the Texas Code of Criminal Procedure, and the statute includes an additional warning that the accused "has the right to terminate the interview at any time[.]" Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (West 2005).

The following facts are not disputed in any material respect. After officers entered appellant's home pursuant to the search warrant, appellant and Gaines were removed from their bedroom, handcuffed, and seated at a kitchen table. While officers were searching the residence, appellant became concerned about his parents' home being damaged during the search. Appellant asked to speak to Officer Brent Nichols, and when Nichols assented, appellant asked him not to "tear up" his parents' place. Nichols responded to the effect that he would "go easy" on appellant if he told police where everything was. Based on this statement, appellant said he believed Nichols was promising that officers would not tear up his parents' house and would not charge him with a crime, if he showed them evidence hidden on the property. Appellant then led officers to a place where some materials were buried, and while officers were digging up the contraband, he asked if officers would charge a third party, who allegedly owned the concealed materials, rather than him. Nichols apparently responded that the materials would be fingerprinted to determine if they could be connected to another person and, if so, whether criminal charges would be filed against appellant would depend on what other evidence was discovered. Appellant further offered to provide information regarding other methamphetamine manufacturers, and, in response, Captain Dwight Hardin with the Burnet County Sheriff's Office agreed not to prosecute federal charges against appellant in return for his cooperation in that regard. Appellant later led officers to additional materials hidden in a shed on his property. None of appellant's non-verbal or oral statements were recorded electronically or reduced to a signed writing. *See* Code Crim. Proc. art. 38.22 (procedural requirements for using accused's oral and written statements in criminal proceedings).

11

What is factually disputed in this case is whether appellant was given his *Miranda* warnings before he initiated the conversation with Officer Nichols about avoiding damage to his parents' home. Officer Hicks testified at the suppression hearing that appellant "was read his *Miranda* warnings while [appellant and Gaines] sat at the table. That was right after we entered the residence." Appellant contends that he was not given his *Miranda* warnings until after he showed officers the concealed materials.

After considering the testimony of the witnesses at the suppression hearing, the trial court concluded that appellant's oral and non-verbal statements to the officers were voluntary and were not the product of police officer statements intended to trick or coerce appellant into making inculpatory statements. The trial court noted that appellant initiated the conversation that led to his disclosure of the hidden materials and that he "was one experienced in confrontation with law enforcement [and] was standing in his own home." The trial court also found that appellant "was properly 'Mirandized' prior to the events leading to the discovery and retrieval of the buried jug."

The prosecution may not use statements stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda*, 384 U.S. at 444; *Alvarado v. State*, 853 S.W.2d 17, 20 (Tex. Crim. App. 1993). In order for the *Miranda* safeguards to apply, there must be two showings: (1) the suspect must have been "in custody," and (2) the police must have "interrogated" the suspect either by express questioning or its functional equivalent. *See Rhode Island v. Innis*, 446 U.S. 291, 300-302 (1980); *Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990).

Article 38.22 of the Texas Code of Criminal Procedure further precludes the use of statements that result from custodial interrogation absent compliance with additional procedural safeguards, which include the following with respect to an accused's oral statements: (1) an accurate and unaltered electronic recording of the statement, (2) admonishment of *Miranda* and statutory warnings to the accused before the statement was made, (3) the accused's knowing, intelligent, and voluntary waiver of *Miranda* and statutory warnings, (4) use of an accurate recording device by a competent operator, and (5) positive identification of all voices on the recording. Code Crim. Proc. art. 38.22, § 3. However, article 38.22, § 3(c) specifically exempts from these requirements oral statements that contain "assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed." *Id.* § 3(c). Such statements "need only circumstantially demonstrate the defendant's guilt," and "[if] even a single assertion of fact [is] found to be true and conducive to establishing the defendant's guilt, then the statement is admissible in its entirety." *Woods v. State*, 152 S.W.3d 105, 117 (Tex. Crim. App. 2004). The only warnings that must precede an oral confession admitted under section 3(c) are the *Miranda* warnings. *Robertson v. State*, 871 S.W.2d 701, 714 (Tex. Crim. App. 1993); *see also Perillo v. State*, 758 S.W.2d 567, 575 (Tex. Crim. App. 1988) (stating that *Miranda* warnings must precede confession offered under Article 38.22, § 3(c)). Thus, if appellant's statements do not stem from custodial interrogation, neither *Miranda* nor article 38.22 requires their suppression. *Galloway v. State*, 778 S.W.2d 110, 112 (Tex. App.—Houston [14th Dist.] 1989, no pet.); *see also* Code Crim. Proc. art. 38.22, § 5 (exempting from article 38.22's requirements statements that do not stem from

custodial interrogation or are res gestae of arrest or offense). Even if the appellant's statements were the product of custodial interrogation, they would still be admissible without compliance with article 38.22 as long as *Miranda* warnings were administered before his statement to police.

There is no question that appellant was in custody at the time he showed police where the inculpatory materials were hidden on his property. The State disputes, however, that appellant's statements were the product of an "interrogation" within the meaning of *Miranda* and article 38.22. In the alternative, the State asserts that the statements would be exempt from article 38.22's procedural requirements under the exception stated in section 3(c).

We agree that appellant's non-verbal statement is exempt under section 3(c) even if it was the product of custodial interrogation, an issue we do not reach.[3] Although appellant claims he was not given the *Miranda* warnings until after the hidden materials had been discovered, the trial court determined this issue adversely to him based on Hicks's testimony, and we defer to the trial court's assessment of the credibility of the witnesses and the weight to be given their testimony. *See St. George*, 237 S.W.3d at 725. The same is true regarding the voluntariness of his oral and non-verbal statements to police officers. Further, the non-verbal statement at issue consisted of assertions of fact—the locations of hidden materials related to the production of methamphetamine—that were found to be true and which were conducive to establishing appellant's guilt. Appellant's voluntary statement thus falls squarely within the terms of section 3(c) and, in

---

[3] "Custodial interrogation" is questioning initiated by police after a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. In addition to actual questioning, "interrogation" can encompass police speech or conduct that "the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Words or actions on the part of the police that are normally attendant to arrest and custody do not constitute interrogation. *Id.*

light of the court's determination that appellant was properly *Mirandized*, was admissible without regard to the procedural requirements in article 38.22, § 3.

Appellant also contends that his "confession" was invalid because it was induced by a promise "of such an influential nature that it could cause a defendant to speak untruthfully." *Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997) (citing Code Crim. Proc. art. 38.21, which states that "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under rules hereafter prescribed"). Appellant cites Nichols's "promise" to "go easy" on him and Hardin's "promise" not to prosecute him federally if he provided information about other methamphetamine manufacturers. We conclude that Nichols's response, when considered in the context in which it was made, is not of such an influential nature that it would have caused appellant to speak untruthfully. Nichols's statement was directly responsive to appellant's inquiry about avoiding damage to his parents' home; to the extent appellant perceived it to convey anything more than was spoken, such an interpretation was not reasonable, especially by someone with multiple prior interactions with law enforcement. Hardin's promise came only after appellant showed officers the location of hidden contraband and thus could not have induced appellant's non-verbal statement. Moreover, Hardin testified that the promise not to prosecute federally was based on appellant's offer to provide information about third parties and was not offered in exchange for appellant's confession.

Because the trial court did not abuse its discretion in denying appellant's motion to suppress based on non-compliance with article 38.22 or improper inducement of his "confession," we overrule appellant's second appellate issue.

15

**CONCLUSION**

For the reasons stated, we affirm the judgments of conviction.


_____
J. Woodfin Jones, Chief Justice


Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   April 18, 2013

Do not publish

16