# NO. 12-16-00213-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ISAIAH RODRIGUEZ,*<br>*APPELLANT* | § | *APPEAL FROM THE 371ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *TARRANT COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Isaiah Rodriguez appeals his conviction for injury to a child causing serious bodily injury. He presents four issues on appeal. We affirm.

### BACKGROUND

Appellant, his wife Connie, and his two stepdaughters visited his cousin, Monica Garcia, on November 13, 2014. The next morning, Connie and Garcia went apartment hunting and left Appellant alone with his stepdaughters, P.M. and S.M. When they returned, P.M. was lying on a bed with her back toward the door. P.M. would not eat the following day, and by the evening, she had a fever and could not stand on her own. When P.M. started looking pale and sweating, Connie called 9-1-1. When the paramedics arrived, they performed mouth-to-mouth resuscitation and transported P.M. to Cook's Children's Hospital.

P.M. suffered several internal injuries consistent with being hit or kicked, including a macerated spleen, lacerated liver, traumatic pancreatitis, bruising to her adrenal gland, and internal bleeding. It was determined that these injuries must have occurred on November 14 because she had eaten dinner the previous evening and could not have done so if she was injured. P.M. also had multiple bruises to her face, torso, arms and back.

Appellant was arrested and charged by indictment with injury to a child causing serious bodily injury. He pleaded "not guilty" and the matter proceeded to a jury trial. The jury found Appellant "guilty" and sentenced him to imprisonment for eighty-seven years. This appeal followed.

<u>**VOLUNTARINESS OF STATEMENT**</u>

In his first issue, Appellant contends the trial court improperly admitted his recorded interview because he did not knowingly, intelligently, and voluntarily waive his rights under *Miranda* and Article 38.22 of the Texas Code of Criminal Procedure. Specifically, Appellant argues that the interviewing officer improperly induced him into confessing to the crime.

<u>**Governing Law and Standard of Review**</u>

In *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the United States Supreme Court held that the Fifth Amendment to the United States Constitution prohibits use of an accused's oral statement made as result of custodial interrogation unless he is given certain warnings and knowingly, intelligently, and voluntarily waives the rights set out in those warnings. *See Miranda,* 384 U.S. at 478–79, 85 S. Ct. at 1629–30. Specifically, an accused must be warned prior to any questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney[,] one will be appointed for him prior to any questioning if he so desires." *Id.,* 384 U.S. at 479, 85 S. Ct. at 1630.

"A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion[.]" TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). Under Article 38.22, no oral statement of an accused made as a result of custodial interrogation shall be admissible against an accused in a criminal proceeding unless (1) the statement was recorded, and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *Id*. art. 38.22 § 3(a) (West Supp. 2016); *Joseph v. State,* 309 S.W.3d 20, 23–24 (Tex. Crim. App. 2010). The warnings required by Article 38.22 include those stated in *Miranda,* as well as a warning that the accused "has the right to terminate the interview at any time." TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ 2(a), 3(a)(2); *Herrera v. State,* 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

The State cannot use a statement that was induced by a promise "of such an influential nature that it could cause a defendant to speak untruthfully." *Henson v. State*, 440 S.W.3d 732, 743 (Tex. App.—Austin 2013, no pet.) (quoting *Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997)). For a promise to render a statement inadmissible, the promise must be positive for the defendant, made or sanctioned by someone in authority, and of such an influential nature that the defendant would speak untruthfully in response. *See Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). To determine if the promise of a benefit was likely to influence a defendant to speak untruthfully, we must look to whether the circumstances of the promise made the defendant "inclined to admit a crime he didn't commit." *Garcia v. State*, 919 S.W.2d 370, 388 (Tex. Crim. App. 1994).

The State has the burden of showing by a preponderance of the evidence that an accused knowingly, intelligently, and voluntarily waived his rights. *See Joseph*, 309 S.W.3d at 24. "[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* at 25. Additionally, "the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* In making a determination as to waiver, "the totality of the circumstances surrounding the interrogation" must be considered. *Id.* We review the trial court's decision to admit Appellant's interview under an abuse of discretion standard. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

**<u>Analysis</u>**

At trial, the State offered into evidence the audio and video recording of an interview between Grant Gildon, a detective with the Arlington Police Department, and Appellant. During the interview, Appellant admitted to hitting and kicking P.M. while they were alone. Appellant objected to the video in a pre-trial motion in limine. Appellant argued that his statement was not voluntary because he was coming down from a heroin high, promised a cigarette if he cooperated, and told that he would be treated less severely if he lost control instead of planning to harm P.M. The trial court denied the motion after viewing the video. Appellant renewed his objection at trial, which the trial court overruled. On appeal, Appellant contends that he confessed only because he was promised a cigarette if he cooperated.

On the video, Detective Gildon identified himself and another detective and asked Appellant if he could read and write English. The detective then read Appellant his rights as

listed in Article 38.22. Appellant nodded and stated that he understood the warnings and then agreed to speak with the detectives. Immediately thereafter, Detective Gildon proceeded with his questioning and Appellant answered the questions. At no time did Appellant request an attorney or insist that the interview cease. Several times during the interview, including once before the assault was discussed, Appellant requested a cigarette, and Detective Gildon assured Appellant that he would get one. Detective Gildon told Appellant that he would get him a cigarette if Appellant told him what happened the day of the incident. Gildon repeatedly told Appellant that he knew Appellant had hurt P.M. and that he needed to know whether his actions were premeditated. After some further questioning, Appellant told Detective Gildon that he "snapped." Appellant then proceeded to tell the detectives the details of exactly what had occurred. Later in the interview, Detective Gildon offered to take a break and find Appellant a cigarette, but Appellant said he wanted to talk further first. When the interview was finished, Detective Gildon testified that he took Appellant to a courtyard where he smoked two cigarettes.

Although Appellant requested a cigarette several times during the interview, Gildon's promise to let Appellant have a cigarette is not the kind of promise that would typically be considered as influencing a person to speak untruthfully. *See Flores v. State,* Nos. 14-08-00835-CR, 14-08-00848-CR, 2010 WL 5238580, at *5 (Tex. App.—Houston [14th Dist.] Dec. 16, 2010, pet. ref'd) (mem. op., not designated for publication) (appellant requested a cigarette several times during videotaped interview, but detective's promise to let appellant have a cigarette break did not rise to the level of coercion or render statement involuntary); *see also Vasquez v. State,* 179 S.W.3d 646, 656 (Tex. App.—Austin 2005), *aff'd,* 225 S.W.3d 541 (Tex. Crim. App. 2007) ("detectives' vague promises of 'help,' or the promise of cigarettes, were not of such an influential nature that they would have caused Vasquez to speak untruthfully"); *Muniz,* 851 S.W.2d at 254 (determining that promise to contact charitable agencies to assist defendant's wife and mother was not the type of promise that would likely cause someone to confess to aggravated rape and murder). Moreover, Appellant was charged with a serious crime, a first-degree felony, and it is unlikely that he would confess to such a crime for the sake of a cigarette. *See Flores*, 2010 WL 5238580, at *5.

Gildon's success in persuading Appellant to disclose what happened to P.M. does not indicate that Appellant's decision was not made of his own free will. *See Vasquez,* 179 S.W.3d at 656. The recording demonstrates that Appellant appeared to understand his rights and

4

answered affirmatively when asked if he understood those rights. *See **Joseph**,* 309 S.W.3d at 25. The record reflects that Appellant possessed the basic reasoning skills necessary to understand his rights, and he readily conversed with investigators. *See **Gomes v. State**,* 9 S.W.3d 373, 377 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). When Gildon gave Appellant the opportunity to have a cigarette, Appellant chose to talk further instead of accepting Gildon's offer. The record contains no evidence of intimidation or coercion. *See **Joseph**,* 309 S.W.3d at 25. Accordingly, we conclude that the totality of the circumstances shows that Appellant knowingly, intelligently, and voluntarily waived his rights under Article 38.22 and ***Miranda***. *See **Miranda**,* 384 U.S. at 479, 85 S. Ct. at 1630; *see also* TEX. CODE CRIM. PROC. ANN. arts. 38.21, 38.22 §§ 2(a), 3(a). For this reason, the trial court did not abuse its discretion by admitting Appellant's videotaped interview into evidence. *See **Martin**,* 173 S.W.3d at 467. We overrule Appellant's first issue.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In his second issue, Appellant argues that the trial court erred by failing to file findings of fact and conclusions of law after hearing his pretrial motion in limine. Appellant's motion raised a question as to the voluntariness of his statements to the police. After a hearing on the evidence, the trial court orally denied the motion. No findings of fact or conclusions of law were included in the original appellate record.

When a question is raised as to the voluntariness of a defendant's statements, the trial court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 6. If the trial court finds that the statement was voluntary and holds it admissible as a matter of law and fact, it must enter an order stating its conclusion as to whether the statement was voluntarily made, along with the specific findings of fact upon which the conclusion was based. ***Id****.*

The court of criminal appeals has held that "written findings are required in all cases concerning voluntariness. [Section 6 of article 38.22] has no exceptions." *See **Vasquez v. State**,* 411 S.W.3d 918, 920 (Tex. Crim. App. 2013). When such findings are not filed, a court of appeals errs by not abating for them, even where neither party requested written findings at any level of the proceedings. *See **id****.*

5

Here, because we did not find the trial court's findings and conclusions in the record, we abated the case and remanded it for preparation of an order stating the trial court's conclusions and findings of fact. *See id.* The order was subsequently prepared by the trial court and included in a supplemental clerk's record certified to this Court. We allowed Appellant and the State time to file supplemental briefs based on those conclusions and findings. The time for filing supplemental briefs expired, and none were filed.

Because the trial court has now complied with Section 6 of Article 38.22, we conclude that any error in its previous failure to file the required findings and conclusions is cured. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 6; *see also* **Miller v. State***,* No. 12-15-00198-CR, 2017 WL 361203, at *1 (Tex. App.—Tyler Jan. 25, 2017, no pet.) (mem. op., not designated for publication). Accordingly, we overrule Appellant's second issue.

## CHARGE ERROR

In his third issue, Appellant contends the trial court erred by failing to properly instruct the jury as to the voluntariness of his statement.

### Standard of Review

The review of an alleged jury charge error in a criminal trial is a two-step process. ***Abdnor v. State****,* 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, an appellate court must determine whether there was error in the jury charge. *Id.* Second, if there is charge error, we must determine whether there is sufficient harm to require reversal. *Id.* at 731–32. The standard for determining harm depends on whether the appellant objected to the error at trial. *Id.* at 732.

When an appellant does not raise the error at trial, as in this case, he can prevail only if the error is so egregious and created such harm that he has not had a fair and impartial trial. ***Almanza v. State****,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). In determining whether an appellant was deprived of a fair and impartial trial, we review the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *See* ***Taylor v. State****,* 332 S.W.3d 483, 489 (Tex. Crim. App. 2011); ***Almanza****,* 686 S.W.2d at 171. We will examine any part of the record that may illuminate the actual, not just theoretical, harm to the accused. *See* ***Taylor****,* 332 S.W.3d at 489–90. Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect

the defensive theory, or make a case for conviction clearly and significantly more persuasive. *See id*. at 490. Egregious harm is a difficult standard to prove and such a determination must be made on a case-by-case basis. *See Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

**Analysis**

Appellant argues that the jury charge should have included an instruction under Article 38.23 and that the general voluntariness instruction pursuant to Article 38.22, which the trial court's charge included, was insufficient.

Article 38.23 requires that a jury be instructed, in cases where evidence is obtained in violation of the constitution or laws of Texas or the United States, "that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). Article 38.22, section 6, states that "[u]pon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof." *Id*. art. 38.22, §6.

The Court of Criminal Appeals has thoroughly addressed the issue of jury instructions relevant to the voluntariness of a defendant's confession. *Oursbourn v. State*, 259 S.W.3d 159, 169–79 (Tex. Crim. App. 2008). The court explained that there are three types of instructions under Texas statutory law that relate to the taking of confessions: (1) a "general" Article 38.22, section 6 voluntariness instruction; (2) a "general" Article 38.22, section 7 warnings instruction (referring to the warnings under Article 38.22, sections 2 and 3); and (3) a "specific" Article 38.23(a) exclusionary-rule instruction. *Id*. at 173; *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2, 3, 6 & 7, art. 38.23(a). Due process and *Miranda* claims—involving police overreaching and coercion—may warrant both "general" and "specific" voluntariness instructions, while Texas statutory involuntariness claims—which may implicate the defendant's state of mind—warrant only a "general" voluntariness instruction. *Oursbourn*, 259 S.W.3d at 174.

A "specific" exclusionary-rule instruction concerning the making of a confession is warranted only when police activity involves inherently coercive practices like those set out in *Colorado v. Connelly*, 479 U.S. 157, 163 & n.1, 107 S. Ct. 515, 520 & n.1, 93 L. Ed. 2d 473

(1986). *Oursbourn*, 259 S.W.3d at 178. Such practices include those where (1) a defendant is subjected to four-hour interrogation while incapacitated and sedated in the intensive-care unit; (2) a defendant on medication is interrogated for over eighteen hours without food or sleep; (3) police officers held a gun to the head of a wounded confessant to extract a confession; and (4) defendant was subjected to sixteen days of incommunicado interrogation in a closed cell without windows, limited food, and coercive tactics. *Connelly*, 479 U.S. at 163 n.1, 107 S. Ct. at 520 n.1. There are three requirements to trigger an Article 38.23(a) instruction: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence of fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the statement claimed to be involuntary. *Oursbourn*, 259 S.W.3d at 177. "This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument." *Id.*

In its charge to the jury, the trial court included the general voluntariness instruction under Article 38.22, section 6, which stated as follows:

> You have seen evidence that the Defendant gave a statement in this case. Unless you believe beyond a reasonable doubt that the statement was voluntarily made, you shall not consider such statement for any purpose nor any evidence obtained as a result thereof.

Appellant contends this instruction was insufficient because the jury was not instructed that the State had to prove beyond a reasonable doubt that his statement was voluntary.

However, Appellant does not contend, and the record does not demonstrate, that Detective Gildon implemented the type of coercive police tactics referenced in *Connelly* as part of his attempts to convince Appellant to give a statement admitting guilt. *See Connelly*, 479 U.S. at 163 & n.1, 107 S. Ct. at 520 & n.1; *see also Oursbourn*, 259 S.W.3d at 178. There is no fact issue, and no affirmative evidence, showing that Detective Gildon threatened Appellant in any way. As stated previously, Gildon's promise to provide Appellant with a cigarette, should he disclose what happened to P.M. on the day of the offense, is not the kind of promise that would typically be considered as influencing a person to speak untruthfully. Such a promise certainly does not rise to the level of coercive tactics contemplated by *Connelly*. *See Connelly*, 479 U.S. at 163 n.1, 107 S. Ct. at 520 n.1. Because there is no disputed fact issue about whether a *Connelly* type of coercive practice was employed to wring a confession out of Appellant

8

against his will, a specific exclusionary-rule instruction under Article 38.23 was not appropriate. *See Oursbourn*, 259 S.W.3d at 178. Accordingly, the trial court did not err by failing to include an Article 38.23 specific voluntariness instruction in the jury charge. We overrule Appellant's third issue.


## MOTION FOR MISTRIAL

In Appellant's fourth issue, he argues that the trial court erred when it denied his motion for mistrial following the State's improper jury argument.

### Standard of Review and Applicable Law

We review the denial of a motion for mistrial under the abuse of discretion standard. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).

Mistrial is appropriate only for "highly prejudicial and incurable errors." *See Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). In most cases, the trial court's instruction to disregard will cure any error. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). We presume that an instruction to disregard will be obeyed by the jury. *See Pierson v. State*, 426 S.W.3d 763, 778 (Tex. Crim. App. 2014). Mistrial is an extreme and exceedingly uncommon remedy that is appropriate only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Id.* A trial court grants a mistrial "to end trial proceedings when faced with error so prejudicial that 'expenditure of further time and expense would be wasteful and futile.'" *Simpson*, 119 S.W.3d at 272 (quoting *Wood v. State*, 18 S.W.3d at 648). Whether a particular error calls for a mistrial depends on the peculiar facts and circumstances of the case. *Hernandez v. State*, 805 S.W.2d 409, 413 (Tex. Crim. App. 1990).

Parties should use closing argument to facilitate the jury's proper analysis of the evidence presented at trial. *See Zambrano v. State*, 431 S.W.3d 162, 171 (Tex. App.–San Antonio 2014, no pet.). Proper argument consists of (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). To determine if the prosecuting attorney made an improper argument, the reviewing court must consider the entire

9

argument in context, not merely isolated sentences. *See **Rodriguez v. State**,* 90 S.W.3d 340, 364 (Tex. App.—El Paso 2001, pet. ref'd).

We examine three factors to determine if impermissible jury argument requires a mistrial. ***Mosley v. State**,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). They are (1) the severity of the misconduct, (2) measures adopted to cure the misconduct, and (3) the certainty of the conviction absent the misconduct. ***Id.***

## Closing Argument

During its closing argument, the State argued that the evidence was unopposed, one-sided, and unchallenged. Appellant objected, asserting that the State was inviting the jury to reverse the burden of proof. Appellant also requested the trial court instruct the jury to disregard the State's statements and moved for a mistrial. The trial court sustained Appellant's objection and instructed the jury to disregard the statement, but denied Appellant's motion for mistrial. The State continued with its closing argument, which included the following statements:

> Let's be clear. The burden of proof is on the State. We gladly accept the burden of proof. We stood before you and told you that up front. We brought the case, and we proved the case . . . Every bit of evidence you heard in this entire trial to this point, the guilt/innocence trial, has come from us . . . The defense did not and does not question whether or not [P.M.] suffered serious bodily injury. That is unopposed. The question of serious bodily injury is unchallenged, and it's proven . . . The evidence is one-sided and clear . . . But you heard all the evidence. It's clear, and it's one-sided . . . There's not a question about what happened. Nobody questioned it. There's no challenge to it.

Appellant did not object to any of these statements.

Appellant contends the State's argument attempted to shift the burden of proof to Appellant and commented on Appellant's failure to testify. However, Appellant did not object when the State essentially repeated its arguments. "Where the same objected-to argument is presented elsewhere during trial without objection, no reversible error exists." ***Moyer v. State**,* 948 S.W.2d 525, 531 (Tex. App.—Fort Worth 1997, pet. ref'd); *see **Barnes v. State**,* 70 S.W.3d 294, 307 (Tex. App.—Fort Worth 2002, pet. ref'd) ("Contemporaneous objection must occur each time the objectionable jury argument is made in order to preserve error[]"). Thus, error is not preserved. *See* TEX. R. APP. P. 33.1(a); *see also **Barnes**,* 70 S.W.3d at 307; ***Moyer**,* 948 S.W.2d at 531.

Nevertheless, even had error been preserved, Appellant's argument would not prevail. The State may comment on a defendant's failure to present evidence in his favor. *See **Jackson v. State**,* 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) (prosecutor may comment on defendant's failure to produce witnesses and evidence as long as remark does not fault defendant for exercising right to not testify); ***Caron v. State**,* 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.). These arguments do not shift the burden of proof; they summarize the state of the evidence and draw reasonable deductions from the evidence. ***Caron**,* 162 S.W.3d at 618; ***Campos v. State**,* 458 S.W.3d 120, 151-52 (Tex. App.—Houston [1st Dist.] 2015), *vacated on other grounds*, 466 S.W.3d 181 (Tex. Crim. App. 2015). The State's comments in this case do not fault Appellant for exercising his right to not testify; rather, they are proper comments on Appellant's failure to present evidence in his favor. *See **Jackson**,* 17 S.W.3d at 674; *see also **Wimbrey v. State***, 106 S.W.3d 190, 192 (Tex. App.—Fort Worth 2003, pet. ref'd) ("if the language reasonably can be construed to refer to Appellant's failure to present evidence other than his own testimony, the comment is not improper[]"). Because the State's jury argument was permissible, the trial court did not err by denying Appellant's motion for mistrial. We overrule Appellant's fourth issue.

### DISPOSITION

Having overruled Appellant's four issues, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered September 20, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 20, 2017**

**NO. 12-16-00213-CR**

**ISAIAH RODRIGUEZ,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 371st District Court

of Tarrant County, Texas (Tr.Ct.No. 1458272R)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*