# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00765-CR

---

**The State of Texas, Appellant**

**v.**

**David Pena, III, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2017-110, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

### O P I N I O N

David Pena, III, was charged with possession with intent to deliver between one and four grams of a controlled substance (methamphetamine). *See* Tex. Health & Safety Code §§ 481.102(6), .112(a), (c). Before trial, Pena filed a motion to suppress. The district court granted the motion after a hearing. The State appeals the district court's order granting the motion to suppress. *See* Tex. Code Crim. Proc. art. 44.01(a)(5). We will affirm the district court's order in part, reverse the order in part, and remand for further proceedings consistent with this opinion.

### BACKGROUND

Pena filed a motion to suppress evidence pertaining to a statement that he made and to items that were seized from his trunk after he was arrested. During the suppression hearing, the arresting officer, Officer Christopher Koepp, was the only witness to testify.

Officer Koepp testified that he observed Pena driving a car with an old and faded license plate and that he initiated a traffic stop for driving with an obscured license plate. *See* Tex. Transp. Code § 504.945(a). According to Officer Koepp, Pena admitted that the writing on the plates was faded. Officer Koepp performed a warrant check and discovered a warrant for Pena's arrest for the offense of theft by check. Officer Koepp asked dispatch to confirm that the warrant was still active by contacting "the original agency that the warrant [wa]s out of." Dispatch later confirmed that the warrant was active. Officer Koepp then arrested Pena and discovered "a meth pipe in" Pena's pocket while arresting him. After finding the pipe, Officer Koepp searched the car. While searching the trunk, Officer Koepp and other officers found a handgun, "approximately 3.7 grams" of what appeared to be methamphetamine, multiple clear baggies, two digital scales, and another glass pipe "with pink residue inside the pipe." After the officers completed the search of the trunk and the remainder of the car, they released the car to Pena's son who had been a passenger in the car.

During the suppression hearing, a recording from Officer Koepp's dashboard camera was admitted into evidence. The district court reviewed the recording after the suppression hearing concluded. The recording is generally consistent with Officer Koepp's testimony regarding the reason that he initiated the traffic stop, regarding Pena's admission about the license plate's condition, regarding Officer Koepp's learning about a warrant for Pena's arrest, and regarding Officer Koepp's asking dispatch to confirm the warrant's status. On the recording, Officer Koepp informed Pena that he will have to go to jail if the warrant is confirmed to be active. After dispatch verified that the warrant was active, Officer Koepp told Pena that he was being arrested, placed him in handcuffs, performed a search of his person, and discovered a glass pipe in his pocket. Officer Koepp then asked Pena if there was anything illegal in the car, and Pena stated

2

that there is "maybe a couple of grams" and a weapon in a black bag in the trunk. Officer Koepp then placed Pena in the back of his patrol car. Officer Koepp and two other officers searched the trunk and found a handgun and several baggies containing a white crystalline substance. Shortly thereafter, Officer Koepp read Pena his *Miranda* rights, and Pena stated that he understood those rights.

After viewing the recording, the district court issued an order granting Pena's motion to suppress and issued the following findings of fact and conclusions of law relevant to the issue on appeal:

**Findings of Fact**

1. Comal County Sheriff's Deputy Koepp has proven himself believable, and his testimony is credible.

2. Deputy Koepp articulated facts to justify the initial stop of the Defendant.

3. After the initial stop, Deputy Koepp conducted a warrant check and verified the existence of a non-drug-related warrant (theft by check) for the arrest of the Defendant.

4. During the pendency of verification of the warrant, Deputy Koepp indicated that upon verification of the warrant the Defendant would be arrested but Defendant's son would be allowed to drive the vehicle from the scene of the traffic stop.

. . .

9. At or near this time, two additional police officers arrived as back-up to assist Deputy Koepp.

. . .

11. After the warrant was verified, Defendant was arrested, handcuffed and taken into custody.

12. After the custodial arrest, the Defendant's person and clothing were searched.

3

13. During the search of the Defendant's person, a pipe commonly associated with illicit drug use was found in a pants pocket of the Defendant.

. . .

22. Without reciting the **Miranda** and Texas Code of Criminal Procedure article 38.22 admonitions or receiving waivers thereto, Deputy Koepp asked Defendant if there was anything in the vehicle.

. . .

24. The Defendant replied that there was something in the trunk.

. . .

26. Thereafter, the trunk was searched where alleged illicit narcotics were found inside a backpack along with a handgun.

. . .

30. At no time after the search did Deputy Koepp express, on the video—SX #1 or during the hearing on the motion to suppress, a reason, cause or other articulable fact to justify a search of any portion of the vehicle, specifically including its trunk, for the offense of arrest (theft by check) or any other probable cause arrest arising thereafter—other than receipt of Defendant's statement that there was something in the trunk.

. . .

**Conclusions of Law**

A. Comal County Sheriff's Deputy Koepp conducted a lawful stop of Defendant's vehicle based upon probable cause of a traffic violation.

. . .

C. Deputy Koepp lawfully arrested the Defendant for an outstanding warrant alleging a non-drug-related offense and conducted a lawful pat-down and search incident to the arrest of the Defendant's person.

D. Deputy Koepp lawfully seized a pipe commonly associated with illicit drug use from the Defendant's pant pocket, yet the Defendant was never charged with possession of drug paraphernalia.

E. The existence of the pipe on the Defendant's person did not constitute probable cause to believe additional evidence of the offense of arrest (theft by check) would be found in [the] vehicle.

4

F. The existence of the pipe on the Defendant's person did not, in and of itself, constitute probable cause to believe additional evidence of the offense of possession of drug paraphernalia would be found in the vehicle.

. . .

K. Accordingly, there was not probable cause to believe the vehicle contained evidence, if at all, relevant to offenses other than the offense of arrest, and a broader scope of a warrantless search, *i.e., search of the trunk pursuant to the automobile exception*, was also not objectively and legally authorized by the dictates found in **United States v. Ross**, 456 U.S. 798, 820-21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) *as cited in* **[Arizona v.] Gant**, [556 U.S. 332,] 347 [2009].

. . .

M. Further—at this point in time, the Defendant was legally in custody.

N. By asking Defendant if there was anything in the vehicle, Deputy Koepp interrogated the Defendant.

O. Defendant had not been properly informed of his **Miranda** and Texas Code of Criminal Procedure article 38.22 admonitions before being interrogated, nor did the Defendant legally acknowledge or waive those admonitions and rights before being interrogated.

P. The Defendant's response to the custodial interrogation was obtained in violation of his constitutional rights and statutory protections—although with no mal-intent by Deputy Koepp.

Q. Although Deputy Koepp expressed no ill will nor malice toward the Defendant, the credible evidence objectively indicates that the only reason expressed or acted upon by Deputy Koepp to conduct a search of the trunk of the vehicle was based upon the Defendant's illegally obtained statement.

R. Pursuant to both the U.S. and Texas Constitutions, our Bill of Rights and Texas Code of Criminal Procedure article 38.23, the Defendant's statement that there was something in the trunk should be, as a matter of law, suppressed as well as any evidence seized as a product of that unlawfully obtained statement.

. . .

X. Accordingly, the search of the trunk of the Defendant's vehicle was unlawful.

Y. Moreover, the evidence found in the trunk of the Defendant's vehicle, including but not limited to the alleged controlled substance and a handgun, was unlawfully and illegally seized.

5

After the district court issued its findings of fact and conclusions of law, it issued an addendum explaining that Pena was not given his statutory warnings under article 38.22 and did not waive his rights before Officer Koepp questioned Pena about whether there was anything illegal in the car. For that reason, the district court concluded that Pena's statement was obtained in violation of article 38.22, that the evidence seized from the car was discovered because of the improper questioning of Pena, and that the evidence should be excluded under the Texas "exclusionary rule contained in Article 38.23."

The State appeals the district court's ruling granting Pena's motion to suppress.

**STANDARD OF REVIEW**

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In general, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *See State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see also Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions

6

depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *see State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (stating that trial court is sole trier of fact and judge of credibility of witnesses and weight to be given to their testimonies). If the trial court makes a finding of fact that is derived from video evidence admitted at a suppression hearing, that finding "is still reviewed under a deferential standard." *Carter v. State*, 309 S.W.3d 31, 40 & n.47 (Tex. Crim. App. 2010); *see Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006). In addition, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory, but "a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it." *Story*, 445 S.W.3d at 732.

## DISCUSSION

In one issue, the State presents several related arguments contesting the district court's ruling on Pena's motion to suppress. First, the State argues that the district court erred by suppressing Pena's statement to the police and the evidence pertaining to the items seized from his trunk. More specifically, the State asserts that the district court erred by concluding that the police improperly questioned Pena and seized various items located in the trunk without first providing Pena with the warnings set out in article 38.22 of the Code of Criminal Procedure and in *Miranda*. *See* Tex. Code Crim. Proc. art. 38.22; *Miranda v. Arizona*, 384 U.S. 436 (1966).[1]

---

[1] Although the focus of the majority of the State's brief is on the suppression of the evidence related to the items found in Pena's trunk, the State also asserted in its brief that the district court erred when it determined that Pena's statement was obtained in violation of his constitutional rights and various statutory protections, that the district court erred by suppressing his statement, and that the statement was admissible under article 38.22 of the Code of Criminal Procedure. Accordingly, we will construe the State's briefing as challenging the suppression of both Pena's statement and the evidence pertaining to the items found in the trunk.

7

Next, the State argues that the district court erred by concluding that the search of his trunk and the seizure of the items inside were not supported by probable cause and by suppressing the evidence pertaining to those items.[2]

**Pena's Statement to the Police**

In resolving the State's issue on appeal, we will first address whether the district court erred by suppressing his statement to the police for the alleged failures by the police to provide *Miranda* warnings and the statutory warnings set out in article 38.22 of the Code of Criminal Procedure before questioning Pena.

The Supreme Court has explained that a person who is questioned by the police after he is "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *See Miranda*, 384 U.S. at 444. "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." *Akins v. State*, 202 S.W.3d 879, 890 (Tex. App.—Fort Worth 2006, pet. ref'd). This rule is "a judicially imposed rule of evidence: questioning in violation of *Miranda* is not itself illegal; the answers to such questioning are simply inadmissible in court." *Baker v. State*, 956 S.W.2d 19, 24 (Tex. Crim. App. 1997). "[T]he *Miranda* requirements embody an exclusionary rule or remedy rather than

---

[2] In its brief, the State also asserts that many of the district court's findings of fact and conclusions of law incorrectly considered the subjective intent of Officer Koepp rather than performing "an objective assessment of [his] actions in light of the facts and circumstances then known to him." *See Scott v. United States*, 436 U.S. 128, 137 (1978). Although we agree that "the subjective intent of the officer conducting the stop is irrelevant," *see Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001), given our ultimate resolution that the seizure in this case was supported by probable cause, we need not address the State's specific challenges to those findings and conclusions, *see* Tex. R. App. P. 47.1.

a substantive right or entitlement. Statements taken in violation of *Miranda* are not obtained in violation of the law; they are simply statements that are subject to a judicially imposed prophylactic rule of exclusion." *Id.*

An individual is considered to be in custody and must be given his *Miranda* warnings in the following four general situations:

> (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect he is not free to leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest the suspect, and law enforcement officers do not tell the suspect he is free to leave.

*Ervin v. State*, 333 S.W.3d 187, 205 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Accordingly, "for the *Miranda* safeguards to apply, there must be two showings: (1) the suspect must have been 'in custody,' and (2) the police must have 'interrogated' the suspect either by express questioning or its functional equivalent." *Henson v. State*, 440 S.W.3d 732, 742 (Tex. App.—Austin 2013, no pet.).

Similar to the *Miranda* warnings listed above, article 38.22 of the Code of Criminal Procedure sets out warnings that must be provided before custodial interrogation begins as well as other requirements, *see* Tex. Code Crim. Proc. art. 38.22, and "precludes the use of statements that result from custodial interrogation absent compliance with [those] additional procedural safeguards." *Henson*, 440 S.W.3d at 742. For oral statements given by an accused, those safeguards include the following:

> (1) an accurate and unaltered electronic recording of the statement, (2) admonishment of *Miranda* and statutory warnings to the accused before the statement was made, (3) the accused's knowing, intelligent, and voluntary waiver

9

of *Miranda* and statutory warnings, (4) use of an accurate recording device by a competent operator, and (5) positive identification of all voices on the recording.

*Id.* (citing Tex. Code Crim. Proc. art. 38.22, § 3).

As set out previously, the district court found that Officer Koepp informed Pena that an initial warrant check indicated that there was a warrant out for his arrest, that he would be arrested if the warrant was confirmed by dispatch, that dispatch confirmed that the warrant was valid, that Officer Koepp placed him in handcuffs, that Officer Koepp took him into custody, and that Officer Koepp questioned him about whether there were any drugs in the car without reciting the *Miranda* warnings or the statutory warnings under article 38.22. Those findings are supported by the testimony from Officer Koepp and by the recording from Officer Koepp's dashboard camera. *Cf. State v. Ortiz*, 382 S.W.3d 367, 373 (Tex. Crim. App. 2012) (concluding that defendant was in custody when he made statement to police regarding drugs because, among other reasons, police placed defendant in handcuffs and communicated their belief to defendant that he had been involved in illegal activity); *Bates v. State*, 494 S.W.3d 256, 271 (Tex. App.—Texarkana 2015, pet. ref'd) (determining that defendant was in custody because he "was deprived of his freedom in a significant way by being handcuffed and isolated in a police cruiser," because officers had probable cause to arrest defendant, and because officers did not tell defendant that he was free to leave); *Brooks v. State*, 76 S.W.3d 426, 434 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (explaining that because defendant had outstanding warrants, officers had probable cause to arrest him).

Moreover, the fact that Pena was initially taken into custody due to the existence of a valid arrest warrant for a separate offense does not affect the admissibility of the statement. The Court of Criminal Appeals was confronted with a similar situation in *Nguyen v. State*,

10

292 S.W.3d 671 (Tex. Crim. App. 2009). In that case, Nguyen was arrested for traffic violations and interrogated without being informed of all of his rights under article 38.22 of the Code of Criminal Procedure. *See id.* at 672. One of the statements made by Nguyen "constituted the crime of hindering apprehension," which was a separate offense from the one for which he was arrested and taken into custody. *See id.* In its opinion, the Court of Criminal Appeals rejected the State's argument that the statement should be admitted because Nguyen was in custody for a traffic violation and not for hindering apprehension when he made the statement. *See id.* at 677-78. Further, the court distinguished the circumstances in that case from those in *Herrera v. State*, 241 S.W.3d 520 (Tex. Crim. App. 2007), in which the court determined that an individual that is already incarcerated "for one offense is not necessarily 'in custody' under *Miranda* and Article 38.22 when questioned by law enforcement officers about a separate offense." *See Nguyen*, 292 S.W.3d at 674 (citing *Herrera*, 241 S.W.3d at 531). In particular, the court noted that the holding from "*Herrera* was limited to the incarceration setting—where an inmate is in the custody of the government in a jail, prison, or similar institution but not otherwise under formal arrest. In that setting, an individual is not 'in custody' for purposes of Article 38.22 per se, so the question turns on . . . the facts and circumstances of the case." *See id.* at 678 (internal footnote omitted). However, the court further clarified that "[a] formal arrest . . . always constitutes 'custody' for purposes Article 38.22, regardless of the offense that prompted the arrest." *See id.* Because Nguyen had been formally arrested when he made the statement at issue, the Court of Criminal Appeals concluded that he was in custody for purposes of article 38.22 and upheld the decision by the court of appeals deciding that the statement was inadmissible under article 38.22. *See id.* at 678, 681. Although that opinion focused on article 38.22, the analysis would compel the same result under *Miranda* because "[w]hat constitutes 'custodial interrogation' under

11

Article 38.22 is the same as it is under *Miranda*," *see Hoff v. State*, 516 S.W.3d 137, 139 (Tex. App.—Amarillo 2017, no pet.), and because "a person is considered to be in custody for purposes of *Miranda*" when "the person is formally arrested," *see Sloan v. State*, 418 S.W.3d 884, 889 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). *Cf. Herrera*, 241 S.W.3d at 526 (explaining that "construction of 'custody' for purposes of Article 38.22 is consistent with the meaning of 'custody' for purposes of *Miranda*").

As set out above, the record in this case supports the district court's findings that Pena was taken into custody when he was formally arrested for the offense of theft and subsequently questioned without being provided with the *Miranda* warnings or the warnings set out in article 38.23. Accordingly, we conclude that the district court did not err when it determined that Pena was in custody for purposes of *Miranda* when Officer Koepp questioned him about a separate offense and that his statement about the contents of the trunk should be suppressed because he was not given the *Miranda* warnings before Officer Koepp questioned him. *See Akins*, 202 S.W.3d at 891 (concluding that "[b]ecause Akins did not receive his *Miranda* warnings before being questioned by the investigators, his statement regarding his possession of methamphetamine was inadmissible").

Regarding article 38.22, the State asserts that even if Pena was in custody and even if he was not given the required statutory warnings under article 38.22, his statement was still admissible under article 38.22 because those required warnings are subject to an exception in article 38.22 for oral statements that contain "assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed." Tex. Code Crim. Proc. art. 38.22, § 3(c). In light of the fact that contraband was discovered in

12

Pena's trunk after he admitted the items were there, the State insists that the exception found in subsection 3(c) of article 38.22 applies here and that the safeguards identified in article 38.22 were, therefore, not necessary. However, even in circumstances where the exception applies, the State is still required to provide an accused with the *Miranda* warnings for an oral statement to be admissible under article 38.22. *See Robertson v. State*, 871 S.W.2d 701, 714 (Tex. Crim. App. 1993); *Henson*, 440 S.W.3d at 742.

As discussed earlier, the district court found that Officer Koepp questioned Pena after he was placed into custody without reciting the *Miranda* warnings, and those findings are consistent with the evidence presented at the hearing. Accordingly, regardless of whether the exception under subsection 3(c) applied, we conclude that the district court did not err by determining that Pena's statement made after he was placed in custody was not obtained in compliance with article 38.22 and was, therefore, not admissible. *See* Tex. Code Crim. Proc. art. 38.22.

### Evidence Pertaining to Items in Trunk

Having determined that the district court did not err by suppressing Pena's statement, we now address whether the district court erred by concluding that the evidence pertaining to the items seized from Pena's trunk must be suppressed because the evidence was "seized as a product of that unlawfully obtained statement."

Although statements "taken in violation of *Miranda* must be suppressed, other evidence subsequently obtained as a result of that statement . . . need not be suppressed." *Akins*, 202 S.W.3d at 891. In other words, "[t]he 'fruit of the poisonous tree doctrine' . . . does not apply to mere violations of the prophylactic requirements in *Miranda*." *Marsh v. State*, 115 S.W.3d 709,

13

715 (Tex. App.—Austin 2003, pet. ref'd) (quoting *Baker*, 956 S.W.2d at 22). Instead, "the fruits of a defendant's statement" need to be suppressed "only when the statement was obtained through actual coercion." *Akins*, 202 S.W.3d at 891; *see Baker*, 956 S.W.2d at 23 (explaining that "[i]n the absence of actual coercion, the fruits of a statement taken in violation of *Miranda* need not be suppressed under the 'fruits' doctrine").

During the suppression hearing and in his suppression motion, Pena did not argue that he made the statement because of coercive police questioning practices, and the district court did not determine that Officer Koepp's questioning was coercive or that the statement was involuntary. Moreover, the evidence presented during the hearing established that none of the officers present on the scene engaged in any improperly coercive conduct. In particular, the evidence showed that Officer Koepp asked about the possibility of drugs being in the car shortly after finding the pipe in Pena's pocket, that Officer Koepp spoke in a calm tone of voice, that he did not threaten Pena, and that Pena answered the question quickly. *Cf. Nuttall v. State*, 87 S.W.3d 219, 223 (Tex. App.—Amarillo 2002, no pet.) (determining that officer did not engage in coercive questioning when asking defendant about possibility of there being drugs in car when officer "spoke in a calm, formal tone" and when defendant quickly "admitted that he possessed the baggie").

For these reasons, we conclude that the district court erred by suppressing the evidence pertaining to the items seized from the trunk on the ground that the evidence was only obtained after Pena was questioned about the contents of his car without being given his *Miranda* warnings.

14

When making its suppression ruling, the district court concluded that the evidence pertaining to the items seized from the trunk should also be suppressed because the police failed to comply with the requirements of article 38.22. *See* Tex. Code Crim. Proc. art. 38.22. More specifically, the district court explained in its order and in its addendum that the failure to comply with article 38.22 when obtaining the statement from Pena regarding the contents of the trunk compels a conclusion that evidence pertaining to the items subsequently found in the trunk must also be suppressed. When explaining its decision, the district court reasoned that a failure to comply with the article 38.22 directives is different from the failure to provide *Miranda* warnings in that article 38.22 is a legislatively enacted law rather than a judicially adopted prophylactic rule. Building on the concept that article 38.22 requirements are different from the *Miranda* ones because article 38.22 directives are statutorily imposed, the district court noted that article 38.23 of the Code of Criminal Procedure specifically states that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or *laws of the State of Texas* . . . shall be admitted in evidence against the accused on the trial of any criminal case." *Id.* art. 38.23(a) (emphasis added). In light of the preceding, the district court determined that the evidence regarding the contents of the trunk was inadmissible under article 38.23 because that evidence was discovered when the police violated the directives of article 38.22 by obtaining a statement from Pena without first complying with the governing procedural safeguards. In his appellee's brief, Pena agrees with the district court's interpretation of articles 38.22 and 38.23, suggests that the language of article 38.22 is mandatory, and urges that the evidence found in the car was not admissible under article 38.22.

We disagree with the district court's and Pena's constructions of these two statutes. "Article 38.22 [i]s a procedural evidentiary rule that governs admissibility; it is different from

Texas's exclusionary rule, Article 38.23," which "is a substantive rule that 'mandates exclusion of evidence when it has been obtained in contravention of legal or constitutional rights.'" *Nguyen*, 292 S.W.3d at 676 (quoting *Davidson v. State*, 25 S.W.3d 183, 186 n.4 (Tex. Crim. App. 2000)). Article 38.22 "prescribes the various requirements that must be satisfied before a statement made by an accused as a result of custodial interrogation will be admitted against him/her at trial. That such requirements are not met does not mean that the statement was necessarily obtained as a result of any legal or constitutional violation." *Davidson*, 25 S.W.3d at 186 n.4. Additionally, article "38.22 mandates exclusion of such statements by its own terms and without reference to art[icle] 38.23." *Id.* Accordingly, article 38.22 "more closely resembles" the Rules of Evidence governing the admission of evidence of "writings, recordings, and photographs" and is "a procedural evidentiary rule." *Id.*

Although not specifically addressing the interaction between articles 38.22 and 38.23, the Court of Criminal Appeals discussed the relationship between *Miranda* and article 38.23 in *Contreras v. State*, 312 S.W.3d 566 (Tex. Crim. App. 2010). When discussing that relationship, the Court of Criminal Appeals explained as follows:

> [T]he *Miranda* rule is an exclusionary rule in the same way that article 38.23 is an exclusionary rule. *Miranda* does not set forth substantive constitutional rights with regard to interrogations; rather, that decision and its progeny set up rules for the admission of certain statements by the accused—excluding a statement under certain conditions when it is determined that law enforcement failed to observe certain practices during a custodial interrogation. The failure to observe those practices—give warnings, honor warnings, etc.—is not itself a constitutional violation, but the admission, in certain circumstances, of a statement that was taken without observing those practices is. *Miranda* is not violated until the statement is admitted into evidence in a criminal proceeding, and then only if an "exception" to *Miranda* does not apply.
>
> . . .

16

Police officers may fail to follow guidelines set forth in *Miranda*, but they cannot, properly speaking, violate *Miranda*. Only a court, by admitting evidence that *Miranda* proscribes, can violate *Miranda*.

. . .

Since the failure of police officers to honor the invocation of rights under *Miranda* is not itself a violation of the United States Constitution, it cannot be a basis for invoking article 38.23.

. . .

To hold otherwise would require that article 38.23 somehow retroactively render evidence inadmissible after it is admitted, since it is the admission itself that violates the constitution. This absurdity results because an attempt to invoke *Miranda* through article 38.23 is really the stacking of one exclusionary rule on top of another.

. . .

Under Supreme Court precedent, for example, the "fruits" of a non-*Miranda*-compliant statement are admissible. But if article 38.23 were held to apply to a non-*Miranda*-compliant statement, then the fruits of the statement would also be inadmissible under article 38.23. *Miranda* or article 38.22, not article 38.23, is the vehicle for excluding statements obtained in violation of the *Miranda* guidelines. . . . *Miranda* claims do not fall within the ambit of article 38.23 . . . .

*Id.* at 582-83 (internal footnotes omitted).

We believe that the analysis from *Contreras* applies with equal force to article 38.22. In other words, a law-enforcement official's failure to comply with the requirements of article 38.22 does not in itself violate article 38.22; on the contrary, article 38.22 is violated if a statement obtained without complying with the procedural requirements is later admitted into evidence at trial. *Cf. id.* at 583 (explaining that "*Miranda* or article 38.22, not article 38.23, is the vehicle for excluding statements obtained in violation of the *Miranda* guidelines"). Accordingly, Officer Koepp's failure to comply with the procedures listed in article 38.22 resulted in the statement being inadmissible under article 38.22 as correctly determined by the

district court but did not compel a conclusion that the evidence discovered from that statement should be excluded under the Texas exclusionary rule found in article 38.23. Moreover, as set out above, governing case law explains that evidence obtained as a result of a statement from an individual who was not properly given his *Miranda* warnings does not need to be suppressed as fruit of the poisonous tree. In light of the similarity between article 38.22 and the *Miranda* protections, we conclude that the evidence pertaining to the contents of the trunk did not need to be suppressed under the circumstances present here even though Officer Koepp did not comply with the requirements of article 38.22 before questioning Pena about whether there was any contraband in his car.

For these reasons, we conclude that the district court erred by determining that the evidence regarding the items in the trunk was obtained in violation of article 38.22 and should be suppressed under article 38.23.

**Probable Cause**

In addition to concluding that the evidence pertaining to the contents of the trunk should be suppressed for the reasons set out earlier, the district court also determined that the evidence should be suppressed because the discovery of the drugs and the gun in the trunk was the result of a warrantless search and seizure that were not supported by probable cause.

Under the Fourth Amendment, "a warrantless search of either a person or property is considered per se unreasonable subject to a 'few specifically defined and well established exceptions.'" *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (internal quotations omitted). Reasonableness is the touchstone of the Fourth Amendment, and the reasonableness of a search or seizure "is measured in objective terms by examining the totality of the circumstances."

18

*Ohio v. Robinette*, 519 U.S. 33, 39 (1996). "When a search has been conducted without a warrant, the State carries the burden in a motion to suppress to establish the application of the exception for the requirement to obtain a warrant." *Marcopoulos v. State*, 548 S.W.3d 697, 703 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). One exception to the warrant requirement before a search is performed is the automobile exception. *Dwinal v. State*, No. 03-17-00012-CR, 2017 WL 5077980, at *4 (Tex. App.—Austin Nov. 3, 2017, no pet.) (mem. op., not designated for publication). "Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009); *see also id.* (explaining that automobile exception is premised on justifications that ready mobility of vehicles creates exigency and that individuals have "a reduced expectation of privacy in a vehicle because it is subject to" extensive regulation by government). Probable cause "exists when facts and circumstances within the officer's knowledge *or* about which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense was or is being committed." *Lopez v. State*, 223 S.W.3d 408, 414 (Tex. App.—Amarillo 2006, no pet.); *see Boyett v. State*, 485 S.W.3d 581, 595 (Tex. App.—Texarkana 2016, pet. ref'd). "The subjective intent or motivations of law enforcement officials is not taken into account when considering the totality of the circumstances." *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

Although Pena acknowledges the automobile exception in his brief, he asserts that controlling case law limits the scope of the search to the area within an arrestee's immediate control and does not authorize a search of the entire vehicle once the arrestee has been secured. Accordingly, Pena asserts that the exception did not apply because he had already been removed

19

from the car and secured before the officers began searching the vehicle. Additionally, Pena contends that the discovery of the pipe in his shorts did not satisfy the requirements of the automobile exception or authorize a search of his car, including the trunk.

As support for these arguments, Pena relies on cases like *Chimel v. California*, 395 U.S. 752 (1969), and *Arizona v. Gant*, 556 U.S. 332 (2009). In *Chimel*, three officers arrived at Chimel's home with a warrant for his arrest, but the officers did not have a search warrant. 395 U.S. at 753, 754. After the officers showed Chimel the arrest warrant, they searched his entire house over his objection and seized various items. *Id.* at 754. When discussing the propriety of the search, the Supreme Court explained that "[t]here is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence," *id.* at 763, but concluded that the search was unreasonable because it "went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him," *id.* at 768.

In *Gant*, the police arrested Gant for a traffic offense, placed him in the back of a police car after handcuffing him, searched his car, and found drugs in a jacket in the backseat. 556 U.S. at 335. When assessing the propriety of the search, the Supreme Court explained that after a "recent" occupant of a vehicle is arrested, police may search the vehicle "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 343. The Supreme Court also explained that in "the vehicle context," police may also search a vehicle after an occupant has been arrested if "it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring)). Ultimately, the Supreme Court

20

concluded that "[b]ecause police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable." *Id.* at 344.

Although Pena correctly points out that the Supreme Court described significant limitations on the scope of searches in *Chimel* and *Gant*, neither of those cases involved the exception to the warrant requirement at issue in this case—the automobile exception. Instead, both of those cases outlined the limits of another exception to the warrant requirement—the search incident to arrest. *See Gant*, 556 U.S. at 338; *Chimel*, 395 U.S. at 763. The Supreme Court addressed the scope of a warrantless search under the automobile exception in *United States v. Ross*, 456 U.S. 798, 825 (1982). Specifically, the Supreme Court explained that "[t]he scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause"; that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search"; and that "[w]hen a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between . . . glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *Id.* at 821, 823, 825. Furthermore, the Court clarified that "[t]he scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* at 824. When later discussing the scope of this exception in a subsequent case, the Court summarized the holding from *Ross* as authorizing "a search of any area of the vehicle in which the evidence might be found" "[i]f there is probable

21

cause to believe a vehicle contains evidence of criminal activity" and explained that the analysis from *Ross* "allows searches for evidence relevant to offenses other than the offense of arrest." *Gant*, 556 U.S. at 347.

In its order, the district court found that Officer Koepp testified regarding the appearance of Pena's license plate and determined that the traffic stop performed by Officer Koepp was lawful based on reasonable suspicion to believe that Pena committed a traffic violation by displaying a license plate with obscured writing. *See* Tex. Transp. Code § 504.945(a). Similarly, the district court found that Officer Koepp discovered in Pena's pocket a pipe commonly used for the consumption of drugs and concluded that Officer Koepp lawfully seized the pipe from Pena's pocket during a search incident to Pena's arrest. The record supports the district court's findings, and we conclude that the district court did not err by determining that there was reasonable suspicion to initiate the traffic stop and that Officer Koepp lawfully seized the pipe. *See Martinez v. State*, 500 S.W.3d 456, 467 (Tex. App.—Beaumont 2016, pet. ref'd) (determining that police officer had reasonable suspicion to believe that defendant committed offense of displaying obscured license plate and rejecting defendant's argument that no violation occurred under terms of statute because State was not "required to prove that an actual violation . . . occurred to justify an officer's decision to stop the car to investigate whether a violation had in fact occurred"); *Dew v. State*, 214 S.W.3d 459, 460, 462 (Tex. App.—Eastland 2005, no pet.) (concluding that seizure of defendant's wallet and plastic bag containing drugs inside wallet was proper because "the search of appellant and seizure of his wallet were justified as a search incident to arrest").

Regarding the search of the trunk and seizure of items in the trunk, we note that Officer Koepp observed Pena driving his car before initiating the stop. Accordingly, the car was

22

readily mobile. *See Rogers v. State*, No. 02-15-00160-CR, 2016 WL 299752, at *4 (Tex. App.—Fort Worth Jan. 14, 2016, pet. ref'd) (mem. op., not designated for publication) (determining that car was mobile because it was driven immediately prior to search); *Liffick v. State*, 167 S.W.3d 518, 521 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (observing that "[a]ppellant's truck was readily capable of being used on the highways because the agents witnessed appellant driving the vehicle shortly before he was arrested"); *see also United States v. Howard*, 489 F.3d 484, 493-94 (2d Cir. 2007) (explaining that phrase "readily mobile" refers more to "inherent mobility of the vehicle than with the potential for the vehicle to be moved from the jurisdiction, thereby precluding a search," reasoning that exception applies "[e]ven when there is little practical likelihood that the vehicle will be driven away," and rejecting argument that car was not readily mobile when defendant was in police custody because, among other reasons, there was possibility that others might drive car away).

Further, Officer Koepp found drug paraphernalia inside Pena's pocket while arresting him. *See Rogers*, 2016 WL 299752, at *1, *4 (noting that during frisk of driver as part of traffic stop, police officer discovered in driver's pocket "a glass pipe of the type used to smoke methamphetamine" and "a bag of methamphetamine" and concluding that probable cause existed to perform warrantless search of car "[u]nder the totality of the circumstances" because it was reasonable for police officer to believe that "vehicle also contained contraband" after officer found "drugs and drug paraphernalia on [driver]'s person").[3] Additionally, although evidence of

---

[3] In his brief, Pena notes that the defendant in *Rogers v. State* was a passenger, not a driver, that Rogers filed a motion to suppress evidence obtained from her bag that was in the car being driven by someone else, and that our sister court of appeals determined that Rogers did not have "standing to challenge the search of the" driver's "person as she does not have a reasonable expectation of privacy in the search of a third person." No. 02-15-00160-CR, 2016 WL 299752, at *1, *2 (Tex. App.—Fort Worth Jan. 14, 2016, pet. ref'd) (mem. op., not designated for

23

the statement was properly suppressed for trial purposes, Pena admitted during his interaction with Officer Koepp that there was methamphetamine and a gun in the trunk of his car. *See Garza v. State*, 34 S.W.3d 591, 596 (Tex. App.—San Antonio 2000, pet. ref'd) (noting that probable cause was established when defendant admitted to committing crime); *see also Elrod v. State*, 533 S.W.3d 52, 57 (Tex. App.—Texarkana 2017, no pet.) (concluding that there was probable cause to perform warrantless search of car where officer noticed smell of alcohol and where driver admitted that there was open container in vehicle and that there was probable cause to search for marijuana where police officer noticed marijuana pipe and where defendant admitted that there was marijuana in car).

Considering the totality of the circumstances and information known to Officer Koepp, there was sufficient information to justify Officer Koepp's belief that Pena's car contained contraband. Accordingly, we must conclude that the district court erred by determining that there was no probable cause to search Pena's car, including his trunk, because the requirements of the automobile exception were satisfied here. *See Gallegos v. State*, No. 05-95-00772-CR, 1999 WL 463369, at *1, *3 (Tex. App.—Dallas July 9, 1999, no pet.) (not designated for publication) (concluding that "[o]nce the officer had probable cause to search the car for

---

publication). Accordingly, in light of these differences from the present case, Pena contends that the analysis from *Rogers* is inapplicable and further contends that reliance on *Rogers* would also be improper because the case is unpublished.

Although the opinion from our sister court was not published, we find the analysis from that case instructive here. *See* Tex. R. App. P. 47.7. While our sister court determined that Rogers had no standing to contest the propriety of the search of the driver, it also concluded that she did have standing to challenge the search of her bag. *Rogers*, 2016 WL 299752, at *2. Moreover, as set out above, when considering the merits of Rogers's motion to suppress, the court determined that the discovery of drugs and drug paraphernalia in the driver's pocket justified the warrantless search of the car. *Id.* at *4. Further, as set out above, there are other factors in this case beyond Pena's possession of drug paraphernalia establishing probable cause.

24

marijuana, he was authorized to search every part of the vehicle, including the trunk and containers found therein"); *Levine v. State*, 794 S.W.2d 451, 454 (Tex. App.—Amarillo 1990, pet. ref'd) (determining that search of trunk was proper because "probable cause justified the search of every part of the vehicle that might conceal the marihuana," including trunk, and because "[a]ny part of the vehicle may be first searched" once probable cause exists).[4]

For all the reasons previously given, we sustain the portion of the State's issue asserting that the district court erred by concluding that the evidence pertaining to the items seized from Pena's trunk should be suppressed but overrule the portion of the State's issue arguing that the district court erred by determining that the statement that Pena made regarding the contents of his trunk should be suppressed.

## CONCLUSION

Having overruled the State's subissue pertaining to Pena's statement, we affirm the portion of the district court's order suppressing the statement. Having sustained the State's subissue addressing the evidence related to the items seized from Pena's trunk, we reverse the portion of the district court's order suppressing that evidence and remand for further proceedings consistent with this opinion.

---

[4] In its conclusions and in its addendum to its order, the district court referred to several federal cases warning of the dangers of allowing officers to perform extensive warrantless searches incident to arrest, including the *Gant* and *Chimel* cases discussed previously. *See Arizona v. Gant*, 556 U.S. 332, 335 (2009); *Chimel v. California*, 395 U.S. 752, 753-54, 768 (1969). Pena similarly refers to those cases in his appellee's brief. However, none of those cases involved circumstances like those present here where the defendant's actions and statements provided probable cause to search a vehicle for contraband.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed in Part; Reversed and Remanded in Part

Filed:   August 13, 2019

Publish